BLAKENEY VS. FERGUSON ET AL.

A defendant in equity will be relieved, on appeal from a decree against him on the merits, from an oppressive accumulation of costs, not necessary in obtaining

the complainant's rights, but arising from the errors and imperfections of his proceedings.

To enjoin the issuance of a writ of possesssion under the statute, awarded by a court of law, in favor of a purchaser of land at judicial sale under an execution issued against a party in possession, and where there is no allegation or pretence on the part of the adverse claimant, of any fear of waste or injury to the land in controversy, is a totally unauthorized use of the writ of injunction.

Where the complainants' claim real estate under a derivative title, as that they are the widow and heirs of a deceased person to whom the property belonged, such allegation is a material one, and must be proved unless admitted by the answer.

The effect of a total failure to answer is an admission that the whole bill is true: but a partial failure to answer does not admit the part unanswered to be true. In such case the complainant must except to the answer for insufficiency, after which, if the defendant still refuse to answer, the whole bill will be taken as true: but if a replication be filed, without exception, the complainant will be held to have dispensed with a better answer.

It is a general rule, that the separate answer of one defendant cannot be read in evidence at the hearing against his co-defendant, unless he refers to such answer as correct, or is so connected with the answering party as to be bound, under the ordinary rules of law, by his confessions, declarations or admi-sions. The cases of *Whiting & Slark vs. Beebe*, 7 *Eng. at p.* 561, and *Barraque & wife vs. Siter, Price & Co.*, 4 *Eng.* 545, so far as they conflict with this principle overruled.

Where the admissions of one person are offered in evidence against another on account of their joint interest in the subject, the joint interest must be a subsisting one at the time the admission was made: and where on account of a derivative interest, such interest must have been acquired after the admission was made by the persons from whom it was derived.

*Appeal from Pulaski Circuit Court in Chancery.*

Hon. W. H. Feild, Circuit Judge, presiding.

This cause was argued at length upon other points made than those decided:

Hempstead, for the appellant.

Jordan, for the appellees, referring to 2 *Danl. Ch. Pr.* 982. 1 *Greenl. Ev. sec.* 178, *note* 4 *and* 5. *Whiting & Slark vs. Beebe,* 7 *Eng.* 421, that the answer of Moses Ferguson was evidence against his co-defendant.

Mr. Justice SCOTT delivered the opinion of the Court.

On the first day of the April term 1845 of the Pulaski Circuit Court, the appellant became the purchaser of the land in controversy. It was sold as the property of Moses Ferguson, by virtue of an execution, against him and one Michael Hogan, in favor of one Nathaniel Midgett, upon a judgment obtained in May, 1843. During that term the appellant obtained a writ of possession upon his motion, to which Moses Ferguson appeared. From the judgment of the Pulaski Circuit Court granting the writ of possession, an appeal was taken to this court, where in the month of October, 1845, the judgment of the Pulaski court was affirmed. (1 *Eng. R.* 297.)

In the meantime, in the month of August, 1845, Mary Ferguson, as widow, and Moses Ferguson and others, as heirs of Joseph Ferguson, deceased, filed a bill in chancery against the appellant and the heirs of Sampson Gray, deceased, alleging that on the 5th of November, 1827, the sheriff of *Pulaski* county, in the then Territory of Arkansas, sold the land in controversy, in due course of law, for taxes, to the said Sampson Gray, and executed to him the prescribed certificate of purchase: that Gray sold the land to the said Joseph Ferguson for the sum of $—— "in hand, paid by the said Joseph to the said Sampson," with the express understanding and agreement that he, Gray, would convey the land by deed as soon as he should himself receive one from the sheriff in pursuance of law and in accordance with his certificate; but that Gray departed this life before receiving such deed from the sheriff, and before making one to the said Joseph Ferguson: that by virtue of the aforesaid sale and agreement, Joseph Ferguson took possession of the land, and used and occupied it by putting his son, Moses Ferguson, in the possession and quiet enjoyment of the same: that Moses had continued to hold that possession, without adverse claim from any one, up to the 2d of April, 1836, when the said Joseph departed this life, and that since the death of Joseph, Moses had continued in the possession by the consent and permission of the heirs and adminis-

.trator of the said Joseph: that in April, 1845, the land had been sold by execution as the property of Moses, and that the appellant Blakeney became the purchaser, who had received a deed for it from the sheriff of Pulaski county, conveying all the title and interest of the said Moses.

The bill, upon these alleged facts, proceeds to pray the court to decree to the heirs at law of Joseph Ferguson, a valid and sufficient title in law and equity to the tract of land in question, upon condition that they allot to the widow, one third part as a dower estate, and convey to the appellant, Blakeney, an undivided sixth part of the residue, or pay him an equivalent in money, the said sixth part being the alleged interest of Moses in the land.

To this bill, Blakeney interposed a demurrer assigning for cause; 1st, That there was no equity upon the face of the bill. 2d, That complainants showed no title to the land, but a parol agreement between Gray and Joseph Ferguson, which is forbidden by the statute of frauds. 3d, No facts to take the case out of the statute. 4th, No money paid in part performance. 5th, That the agreement was without consideration and void.

The Circuit Court overruled the demurrer, and rendered a final decree in favor of complainants as to Blakeney, and an interlocutory one as to the heirs of Gray, who were duly summoned, but made default. Blakeney appealed to this court, and upon a hearing here, at the January term, 1848, it was held that the facts alleged were sufficient to take the case out of the statute of frauds, but that the allegations were not sufficient to show title in Gray. And the decree appealed from was reversed, and the cause remanded to be proceeded with according to the principles of equity, and not inconsistent with the opinion herein delivered. (3 *Eng. R.* 272.)

While this cause was pending in the Circuit Court, and immediately after the decision of this court, in October, 1845, affirming the judgment of the Pulaski Circuit Court, in the matter of the writ of possession, the same complainants, Mary Ferguson and others, filed their petition in the Pulaski Circuit Court, alleging that they had, on the 28th of August, 1845, filed the before

mentioned bill of complaint, and praying that a copy thereof, which they exhibited, might be taken as a part of their petition: that the defendants had been served with process of subpœna; that the land in question had been sold as aforesaid, and purchased by Blakeney; that the latter had obtained an order of possession; that the order had been appealed from to this court, where the judgment of the Circuit Court in the premises had been affirmed. And upon these alleged facts, verified by affidavit, prayed that the appellant, Blakeney, should be enjoined from all further proceedings with his writ of possession (the award of which had been so affirmed by this court,) until their bill aforesaid should be finally heard and determined. This prayer was resisted by Blakeney, but his resistance was of no avail, and the injunction was awarded. Afterwards he interposed a demurrer to the petition and assigned for cause: 1st, That there was no equity upon the face of the petition. 2d, That it was an attempt to re-investigate a matter already determined by this court, without any showing of further facts or new matter. 3d, That the petition alleged no title to the land, but set up a parol agreement with regard thereto. 4th, That no sufficient facts were alleged to take the case out of the statute of frauds. 5th, That no sum of money was alleged to have been paid in part performance. 6th, That upon the face of the petition, the alleged agreement appears to have been made without consideration, and is therefore void, irrespective of the statute. 7th, That inasmuch as there is failure of any allegation of title, there is no ground upon which to base partition. 8th, That if on the other hand, title be alleged, then there is an adequate remedy at law.

Upon argument, the demurrer was overruled, and the appellant, Blakeney, declining to plead to, or answer the petition, the injunction was perpetuated, and Blakeney appealed to this court, where upon a hearing at the January term, 1849, the decree of the Pulaski Circuit Court, perpetuating the injunction, was reversed, and the cause remanded to be proceeded with, according to the principles of equity, and not inconsistent with the opinion therein delivered, (4 *Eng. R.* 487.)

In the meantime, the same complainants, at the October term, 1848, of the Pulaski Circuit Court, had filed an amended bill as a substitute for their original bill, held bad on demurrer by this court, at the January term, 1848, alleging with exceeding minuteness the peformance of every pre-requisite for a valid sale for taxes under the territorial statute, from its inception up to and including the issuance of the certificate of purchase to Sampson Gray in the year 1827: that in 1828, before obtaining the sheriff's deed in pursuance of the certificate, Gray sold the land to Joseph Ferguson for the sum of fifty dollars, and received the money therefor; and agreed that he would procure such deed and convey all his right, title and interest in the land to the said Joseph, and at the same time placed the latter in possession thereof, in pursuance of this contract : that no person offered to redeem the land within the time prescribed by the statute : that Gray having departed this life before receiving such deed, made none to Joseph: that the representatives of Gray, after his death, delivered to Joseph the certificate of purchase, under which and in pursuance of the contract of sale to him aforesaid, he continued to hold possession: that in 1831, Joseph placed his son Moses in possession of the land as his tenant, who occupied as such until the death of Joseph, in 1836 : that ever since then Moses has held the possession, by the consent and permission of the legal representatives and heirs at law of Joseph, subject to the rights of the latter, and of the widow; with the understanding and agreement that he would yield possession whenever required for the purpose of assigning dower and making partition.   The bill then sets out the levy and sale, as the property of Moses, and the purchase by, and conveyance to the appellant, Blakeney, by the sheriff, Borden, of all the right, title and interest of Moses. And to the alleged end, that the title to the land in controversy may be quieted and vested in the proper owner thereof, and partition be made, concludes with a prayer that the court will decree a valid and sufficient title in law and equity to the heirs at law, upon condition that they assign dower to the widow, and convey

to Blakeney one-sixth part of the residue, or pay him an equivalent in money, if actual partition be impracticable.

In February, 1849, Blakeney answered this amended bill, denying every material allegation as to the sale of the land for taxes; and the subsequent sale by Gray, to Joseph Ferguson, and the latter's possession under the alleged contract of sale: pleads that if any such sale and contract were made, it was within the statute of frauds, and no sufficient facts to take it without the statute: denies the delivery of the certificate of purchase to Joseph Ferguson, or that he ever held under it; admits that Moses Ferguson held the quiet possession of the land in 1831, and before and afterwards, up to and after the commencement of this suit, but denies that he held as tenant of Joseph during the lifetime of the latter, or by consent and permission of the complainants since, but avers that he held it as his own absolute property; avers that in 1837 or 1838, Moses, then in possession, offered to sell the land to the respondent, and was regarded in the community as the owner, and that nothing to the contrary was ever heard until respondent's purchase at sheriff's sale; avers that the owner of the land, when it was sold for taxes, resided in the Territory of Arkansas, and continued to reside here, during the time when Moses Ferguson held the possession, for a sufficient length of time to give Moses a complete title under the statute of limitations, which vested in respondent by virtue of his purchase at sheriff's sale, of the interest and estate of Moses therein: admits the sale and his purchase under the execution, and relies upon it, and pleads that he is an innocent purchaser, for a valuable consideration: avers that there is no equity on the face of this amended bill, and that no such title has been alleged by the complainants, as to entitle them to partition. The answer is verified by affidavit.

Hamilton Reynolds also answered for himself, and, by a separate answer, as guardian for the minor heirs of Sampson Gray, deceased, and admits upon information and belief that the land was sold for taxes and purchased by Gray, deceased, and sold by

him as alleged in the bill: admits the death of Gray, the delivery of the certificate of purchase, afterwards, by his heirs at law and legal representatives, to Joseph ; that Joseph Ferguson placed Moses in the possession as alleged : that the interest of Moses was sold under execution and purchased by Blakeney: that he intermarried with the widow of Gray, and is guardian for the minor heirs, and claims no interest either in right of his wife, or as guardian, or otherwise. In his answer as guardian, he makes a formal denial of the allegations of the bill and requires proof.

The death of Henry C. Gray after the commencement of the suit was suggested, and a decree *pro confesso* taken against the other defendants in default. Replications having been filed, issue was regularly formed, the cause set down for final hearing, and an order for deposition regularly made. Afterwards, on motion, upon no other showing than the face of the bill and answer in, the name of Moses Ferguson was stricken out as a plaintiff and he was made a co-defendant, and his deposition ordered to be taken; to which Blakeney excepted. Moses answered and admitted all the material allegations of the amended bill. Various exceptions were taken to the depositions, which it is unnecessary to notice, for any other purpose than to remark that numerous affidavits were brought in *pro and con*, and several of them were ruled out and retaken.

At this stage of the proceedings, on the 12th of February, 1850, the mandate of this court, upon the reversal of the decree of the Circuit Court, which perpetuated the injunction of Blakeney from proceeding with his writ of possession, was filed, and a motion made to dissolve the injunction in accordance therewith; and for an order of possession.

Three days afterwards, to wit: on the 15th of February, 1850, the complainant filed an amended petition for an injunction, which varied nothing material from the original one, otherwise than by incorporating the amended bill in lieu of the original bill, and prayed that the injunction might be continued until the final hearing of the bill and then perpetuated. On the 9th of Aug., 1851, the motion to dissolve the injunction and the petition to continue

it, came on to be heard—they seeming to have slumbered in the meantime. The former was overruled and the latter granted, and the two causes consolidated and ordered to progress to final hearing together as one cause, all against the objection of Blakeney, to which he filed his bill of exceptions. Ultimately, on the 21st January, 1852, after the exceptions of Blakeney to the depositions of William Saunders, James Erwin and Moses Ferguson, taken on the 12th and 13th of December, 1851, on the part of the complainant, had been overruled, the cause came on for final hearing upon the amended bill and exhibits, the amended petition and all the answers and replications, the depositions above mentioned and those of Samuel M. Rutherford and William E. Woodruff, taken on the 13th and 11th of January, 1851, (to which exceptions had been before overruled and saved) and the exhibits referred to in said deposition. Whereupon it was decreed that the land in controversy should be sold for cash by a commissioner of the court, that out of the proceeds he should pay all the costs accrued in the Circuit Court in these causes, and out of the balance pay the appellant Blakeney one-sixth part, and pay the residue into that court, subject to its future order. But that in the event the proceeds of the sale should be insufficient to pay all these costs, that Blakeney should pay one-sixth part of the deficit and the complainants the residue; and that the injunction against Blakeney from proceeding with his order of possession should be perpetuated. To all of which Blakeney excepted and has appealed to this court.

Thus at the end of about eight years from their inception, these voluminous proceedings were brought to an end in the Circuit Court, after having been in the meantime before this court for correction three several times; and it may be remarked as to the result, that this is not only materially variant from the ostensible object of the complainants, in procuring by decree title to the land in law and equity, and dower estate for the widow, but is oppressive upon the defendant, in putting heavy costs upon him, accumulated by the errors and imperfections of the plaintiff's anomalous proceedings; while at the same time, the de-

fendant, during most of this long period of time, has been kept out of his finally adjudged right to his writ of possession, and its fruits, by the totally unauthorized use of the writ of injunction, as appears, throughout the proceedings, by the complainants' own showing. There was no allegation or pretence that the complainants ever feared any waste, or any injury at all to the land in controversy, much less that the defendant had threatened any such irreparable mischief, as it is the object of an injunction to prevent; while at the same time they expressly showed that the defendant claimed by adverse title, and as between him and them, the title was at least disputed, if not doubtful. (6 *Ves. R.* 89, *id.* 51.

Although the appellant may not avail himself of any objection to the decree relating to title or dower, because he may not be injured thereby, or for its failure to compensate him for the legitimate fruits of his writ of possession, of which he has so long been deprived by this clear abuse of the writ of injunction, because he has not so shaped his defence as to make this objection available to him in this way, he may nevertheless, at least claim in this court to be released from the onerous weight of the excessive costs, which the complainants' anomalous and imperfect process has accumulated in the case, beyond the legitimate costs of such a proceeding, (*Dig. ch.* 40, *sec.* 25, *p.* 284.

Passing by the various objections to the depositions, upon which this cause was tried, and which are saved by the appellants' bill of exceptions, as well as some other points of minor importance that have been suggested we shall proceed at once to a conclusive objection to the decree, which is decisive of this cause.

The complainants come into court upon a derivative title, setting up that they are the widow and heirs at law of Joseph Ferguson, deceased, and make their claim as such under him. This was a material part of their case. It was indeed of the very gist of their bill. The defendant answered, denying *seriatim* almost every other allegation. Prefacing his answer with the usual reservation, and concluding it, after a denial in terms of any "such

81

title in the complainants or any of them as entitle them to partition," with the usual formula "without this," &c. To this the complainants, without any exception for insufficiency or other cause, interposed their replication in short upon the record by consent: the language of which, in the precedents, is that "these repliants say, that they will aver and prove their said bill to be true, certain," &c., and "that the said answer is uncertain, untrue, &c. All which matters and things these repliants are, and will be, ready to aver and prove," &c.

At the hearing, no proof was offered to establish that the complainants were the widow and heirs of Joseph Ferguson, deceased, other than the answer of Moses Ferguson; and the first question is, whether therefore, these material facts were admitted by the answer of Blakeney, the appellant.

According to the theory of a proceeding in equity, the bill although sworn to, is never, at the hearing, evidence for the complainant in any other sense than as an admission of the defendant, either express or implied. It does not recognize the right of the complainant to become a witness in his own behalf, but to compel the defendant to become a witness in the cause, to the extent of a response to every allegation in the bill, and, in general, to confess or deny every one of those, the admission of the truth of which may entitle the complainant to his legitimate relief. The effect of a total failure to answer, is an admission that the whole bill is true, if the defendant continues in this contempt, of the consequences of which he was warned originally before this effect was absolute; of which there are equivalent provisions in our statute. But it does not follow from this, that a partial failure to answer admits the fact unanswered to be true, without any warning at all. On the contrary, if upon exceptions sustained to such an answer, the defendant fails to answer further, instead of the part unanswered being taken as true at all as such, the whole bill is taken *pro confesso* generally; precisely as if no answer at all had been offered, (*Jopling vs. Stewart,* 4 *Ves.* 619; *Turner vs. Gray, ib. in note,* and other cases there cited;) and thus the defendant is allowed time and opportunity for repentance as

before. In harmony with this is the formula of reservation, at the commencement of the answer, which it is said in 2 *Mad. Ch.* 333, was probably intended to prevent a conclusion that the defendant having submitted to answer the bill, admitted everything which by his answer he did not, in express terms, controvert. And also the rule of allowing the plaintiff to except to an answer for insufficiency, not only when the defendant fails to discover, but when he fails to admit or deny, or evades any material allegation. If the effect of a partial answer be, to admit the truth of the part unanswered, why except at all? Such an effect would be equivalent to an answer expressly admitting the part unanswered, and therefore make exceptions unnecessary.

These exceptions serve to give notice to the defendant of matters which may, without design, have escaped his attention, or have not sufficiently arrested it, and enable him to do what he would have otherwise done, and thus save him from surprise. And certainly, in such cases he is more entitled to warning than when in contempt for failing to answer at all, or to make further answer upon exceptions sustained for insufficiency.

Inasmuch then, as when there is a total failure to answer, the complainant can by *pro confesso* get an implied admission of his whole bill; and equally so, when, upon exception sustained, there is a failure to answer further; and as he can require this as well as in aid of his proofs, or to avoid expense, as in cases where he cannot prove the facts at all otherwise than by a discovery; and as the opposite could not be otherwise than mischievous, in often resulting in surprise to the defendant, it seems far more reasonable that after replication without exception to an answer, which may fall short of a perfect one, the complainant should be held to have dispensed with the benefits of a better one, and thereby to have relied upon his own proofs; than that the defendant should be held to have admitted the truth without warning of what might have, without design, escaped his notice.

And to this effect is the decided weight of authority, qualified however in some of the cases by an exception, where the omitted or evaded fact may be *prima facie* within the knowledge of the

defendant, (*Cochran vs. Couper adm'r,* 1 *Harrington R.* 202. *Tate vs. Conner,* 2 *Dev. Ch R.* 224. *Lum vs. Johnson,* 3 *Iredell Ch. R.* 70. *Young vs. Grundy,* 6 *Cranch.* 51. *Coleman vs. Lyne's Ex'r,* 4 *Rand. R.* 456. *Cropper vs. Barton,* 5 *Leigh R.* 432. *Stewart vs. Strong,* 3 *Gill & John.* 510. *Joice vs. Tayloe,* 6 *Gill & John.* 54.)

But any exception would seem to be a departure from the principle and policy of equity practice, and of mischievous tendency. In Kentucky, where the exception prevails, it was held in the case of *Owings vs. Patterson et al.,* 1 *A. K, Marsh. R.* 325, in which the complainants claimed title to land as the *heirs at law of Patterson,* and from the generality and vagueness of the answer, the court was unable to determine whether or not the defendants intended to put the heirship in issue, that the proof of that material ingredient in the complainant's case was upon them at the hearing, and for want of it in the record, reversed the decree in their favor for that cause alone.

In the light of these views and of the authorities that we have examined and cited above, we have no doubt but that it was incumbent upon the complainants below in this case, to prove at the hearing that they were the widow and heirs at law of Joseph Ferguson, deceased, under whom they set up their claim for relief, and so hold.

The question is then presented, whether or not the answer of Moses Ferguson, in which these facts are expressly admitted, was evidence to this point against his co-defendant Blakeney, the appellant. And waiving any question as to whether he was properly any party at all, we shall proceed at once to this inquiry.

We have already seen that the operation of an answer, *as evidence* for the complainant is by way of admission. So, Judge STORY said, in *Reimsdyke vs. Kane,* (1 *Gall. R.* 636,) when speaking of the admissions of one co-partner, which bind another, "an answer is no more than an admission, though a very solemn one." "But an admission in an answer is something more than evidence: it is a *concession in pleading,* which requires no corroborating, and allows of no countervailing proofs," as was remarked

by Judge BALDWIN, in the case of *Pettit vs. Jennings*, 2 *Robt. Va. R.* 684. And hence upon the reasonable foundation that no one can admit in evidence, or concede in pleading for another, except in these cases where he is so combined with that other, either legally or by fraud, that the act of one is the act of the other, rest the unquestionable general rule and its exceptions: that the separate answer of one or more defendants cannot be read in evidence to sustain the complainants' bill against a co-defendant.

If it were otherwise, a complainant might so frame his bill, as to elicit evidence from one defendant to charge another, and to exclude such matters as might discharge him. And the evidence thus obtained would be obnoxious to the objections against leading questions, and of being used against a party deprived of the important privilege of cross-examination, whereby the complainant would have undue advantages against the most manifest principles of impartial justice. Indeed it would place an assignee or vendee completely in the power of his assignor or vendor, and subject him to the danger of being made the helpless victim of a fraudulent collusion. Nor does any failure of justice result from rejecting the answer of one defendant as evidence against a co-defendant, because the complainant does not deprive himself of the testimony of one defendant against another by his act, of associating them together as defendants, as in a court of law. If he be not incompetent, or privileged by reason of his interest, the complainant may still examine him as a witness. If he be so, however, his answer can avail the complainant nothing, unless he has admitted it in the allegation sought to be proved. And when he has done so, he is no longer privileged, because he has already given evidence against *himself*.

In the case last cited, upon the question, whether the answer of the assignor of a bond admitting the gaming consideration alleged in the bill, could be read in evidence against his co-defendant and his assignee, who had denied all knowledge of it, the doctrine we are examining was gone into at large, both upon principle and authority; and it was expressly found by the Virginia court, that the same principles which govern admissions *in*

*pais*, whether verbal or written, or made in a former suit, to which the party against whom they were offered was not a party, whether by pleading or evidence or otherwise, govern also, in like manner, an admission in the answer of one defendant in a pending suit, when offered as evidence against his co-defendant.

To the same effect was the conclusion of the Illinois court, in the case of *Martin vs. Dryden et al.*, (1 *Gillman R* 209,) in a case where the vendor and vendee of land were defendants, when they said, "A better test to determine when such an answer would be evidence against a co-defendant claiming under him, or in the same right, as in the case of partners, or successors, is an answer to the question, would his admissions be evidence? Wherever the latter would be admissible, a *fortiori*, would his answer." To the same effect is the language of Judge STORY, in *Reimsdyke vs. Kane et al.*, 1 *Gall. R.* 635.

It is accordingly laid down in Mr. Adam's excellent work on the doctrines of Equity, page 20, that "The discovery obtained by a bill in equity is only available against the answering defendant. It cannot be read in evidence against a co-defendant, unless he refers to it by his answer as correct, or is so connected with the answering party as to be bound, under the ordinary rules of law, by his declarations and admissions." For this he cites *Mitf.* 188; *Anon.* 1 *P. Wm.* 301; *Chewes vs. Jones*, 6 *Mad.* 267; *Crope vs. Bedinfield*, 12 *Sim.* 35; and *Green vs. Pledger* 3 *Hare* 165. To which the American Editors append numerous American cases, including the States of Maine, Vermont, New York, Mississippi, Virginia, Alabama and Maryland; to which they say numerous other cases may be added.

It has been supposed, however, that the "rule does not apply to cases where the defendant claims through him whose answer is offered in evidence," as is laid down in GREENLEAF's work on *Evidence, p.* 210, *sec.* 178 : or, as it is elsewhere expressed, "Where one *defendant* succeeds to *another*, so that the right of the one devolves on the other, and they become privies in estate," per Chief Justice MARSHALL, in *Osborn vs. The Bk. of the U. States*, 9 *Wheat. R.* 332.

This last mentioned case and that of *Field vs. Holland,* 6 *Cranch. R.* 21, are the only two cases, besides those that have followed them as authority,) that give any sanction by this supposed exception.    These two cases were cited by the court of appeals of Maryland in the year 1839, as an authority upon a point like that we are now considering, and that court disposed of them with the following language: "We have given to them a thorough examination and respectful consideration, but not being convinced of their correctness by the reason assigned in their support, and being unable to reconcile them to an otherwise unbroken series of authorities, both English and American, we do not hold ourselves bound to conform to them.    (*Jones vs. Hardesly et al,* 10 *Gill & John. R. at p.* 415.)

The decision of the Maryland court upon this point, was approved, as a "well considered" one, by Chancellor WALWORTH, in the case of *Cristie vs. Bishop,* (1 *Barbour's Ch. R. at p.* 121,) where the assignor and assignee of a judgment were the parties defendant to a bill alleging usury in the original transaction and the subsequent premiums for insurance; and the question was whether the answer of the former, admitting the truth of the allegation, could be read in evidence against the latter, who denied all knowledge as to all or any of the matters in the bill, except some unimportant particulars; and he thus proceeds to remark upon these two decisions of the Supreme Court at Washington, which was cited to him as authority, "There are indeed two cases in which the late Chief Justice Marshall is supposed to have expressed an opinion, that the rule, that the answer of one defendant could not be read in evidence against another, except when they hold a join interest, does not apply to the case of a defendant who has derived title to the subject matter of litigation, under or through the one whose answer is offered in evidence against such defendant.    (*Field vs. Holland,* 6 *Cranch.* 24; *Osborn vs. U. S. Bank,* 9 *Wheat.* 332.)    And I see that the first of these cases is referred to by Professor Greenleaf, in his recent very valuable treatise on the law of Evidence, (*Greenl. Ev. p.* 210, *sec.* 178,) as sustaining the same principle.

"In the case of *Field vs. Holland*, this precise question was not before the court; and the opinion of Chief Justice MARSHALL only goes to the point, that the answer of a defendant, through whom the co-defendant claims, is evidence *in favor* of such co-defendant, as to matters which both were called on to answer, in relation to transactions which took place *before* the sale to such co-defendant. It may perhaps be inferred from the language of the Chief Justice in that case, that if the answer of Holland had admitted the facts charged in the complainant's bill, instead of denying them, it could have been used as evidence *against* his co-defendant, who had purchased under the judgment in his favor againt Cox. But there certainly was nothing to authorize the reporter, in the syllabus of the decision in that case, to state, as a point decided by the court, that the answer of one defendant is evidence *against* other defendants claiming through him. In the case of *Osborne vs. The U. S. Bank*, the question arose as to how far the answer of one treasurer of the State of Ohio, was evidence against his successor in office, as to the identity of funds taken from the Bank by a former treasurer; both being joined as defendants in the same bill. And in reference to the principle of evidence, that the answer of one defendant cannot be read in evidence against another, Ch. J. MARSHALL says, "This is generally, but not universally true. Where one defendant succeeds to another, so that the right of the one devolves on the other, and they become privies in estate, the rule is not admitted to apply. Thus, if an ancestor die pending a suit, and the proceedings be revived against his heir, or if a suit be revived against an executor or administrator, the answer of the deceased person, or any other evidence establishing any other fact against him, might be read also against the person who succeeds to him." And it certainly seems to have been the opinion of the court in that case, that these principles, the correctness of which no one can dispute, were applicable to the case of an answer put in by a defendant, who had parted with all interest in the subject matter of litigation, previous to the commencement of a suit, to one who was afterwards made a co-defendant with him in such suit. But there

is a manifest difference between that case and the case supposed in the opinion of the learned Chief Justice. For in the case supposed, the ancestor or of the deceased party, is an admission made by him while he was owner of the subject matter of litigation and was such as may be given in evidence against any person claiming title under him subsequent to such admission. And upon the same principle, if a bill is taken as confessed against a defendant before his death, and the suit is subsequently revived against his heir, or personal representative, they must apply to vacate the order taking the bill as confessed, if they wish to controvert the allegations in the bill, or set up any defence except such as has arisen subsequent to that order. For the sufficiency of the bill to be taken as confessed against him, was an admission by the original defendant, while he was alone interested in the subject matter of the litigation, that the allegations in the complainant's bill were true, and that he had no valid defence to the claim made by the complainant, except such as appeared from the bill itself. The question, however, now under consideration, did not necessarily arise in the case of *Osborn vs. The U. S. Bank*, because the answer of Sullivan, the successor of Currie, contained a distinct admission that he received the money in controversy from Currie, his predecessor in office, who informed him at the time he delivered the money that it was the money which had been taken from the bank—that answer was therefore *of itself* evidence of the identity of the funds—for it contained evidence of the declaration of the former treasurer, made at the time he parted with the money to his successor. It was not therefore evidence of a declaration of the treasurer, after he had parted with all his interest in the fund to the defendant Sullivan. And as I understand the case, the decision of the court is placed upon that ground: though it is evident the opinion of the learned Chief Justice, was that the answer of Currie, under the circumstances of the case, was admissible in evidence as against a co-defendant."

The case was, that *before* the money in controversy had been taken from the Bank, a subpœna in chancery, and an injunction had been served upon Osborne, the Auditor, whose duty it was

82

to execute the act of the Ohio Legislature, under the specific provisions of which, the money was afterwards taken by his agent, the collector of the revenue, with a full knowledge that the order for the injunction had been made.   By this agent the money was delivered to Currie, the Treasurer, who, after keeping it a few days, transferred its possession to Sullivan, his successor in office.  The bill was afterwards amended, alleging the facts that had transpired subsequently to the order for the injunction, and Currie and Sullivan made co-defendants with Osborne.

When in connection with this State of the case, the whole of the remarks of Chief Justice MARSHALL, are considered, (as well as those quoted by the learned Chancellor, as those which immediately follow them,) it will not appear improbable but that the Chief Justice designed them all to apply only to defendants, who succeeded to rights or purchased the subject matter of litigation *pendente lite;* and that he regarded the case before him as, substantially, one of that character.   If so, although the learned chancellor is doubtless to be sustained in his understanding of the true ground upon which the court decided the cause—that of the answer of Sullivan alone, whereby all that is said of the admissibility of Currie's answer, is left as the dictum only of the Chief Justice—his impressions as to the extent of the views of the latter would be too latitudinous.  While the more limited scope suggested for them, if sustainable would relieve those views from the otherwise just imputation of heterodoxy cast upon them by the learned chancellor.

In the case of *Pettit vs. Jennings*, already cited, the court of appeals of Virginia, after coincident views with those of Chancellor WALWORTH, as to the departure of the case of *Field vs. Holland*, from settled principles and unbroken authority, when taken to have gone the extent of ruling that the answer of Holland would be evidence against his co-defendants claiming through and under him, had it admitted instead of denying the allegations of the bill, as has been inferred, and is stated in the syllabus of the reporter, which they pronounce "wrong" as to this: proceeds to give a version of the case, which relieves it from all criticism, as

follows: "The principle of this decision is not that the answer of a defendant is evidence *for the plaintiff against* a co-defendant, but that, when responsive to the bill it is evidence *against the plaintiff* for the responding defendant, and *enures to the benefit of his co-defendant,* claiming under him, when it destroys the foundation of the plaintiff's claim. The language of the court is as follows: 'Neither is it to be admitted that the answer of Holland is not testimony against the plaintiffs. He is the party against whom the fact, that the judgments were discharged, is to be established, and against whom it is to operate. This fact, when established, it is true, affects the purchasers also; but it affects them consequentially and through him. It affects them as representing him. Consequently, when the fact is established against or for him, it binds them. The plaintiffs themselves call upon Holland for a discovery. They aver that the judgments were discharged and expressly require him to answer this allegation. They cannot now be allowed to say that this answer is no testimony.' It will be seen that the reasoning of the court is at first somewhat indefinite; we presume for the purpose of avoiding the very inference which has been erroneously drawn from it. Its object was to show, in the first place, that the fact of the payment or non-payment of the judgment, *when properly established,* would not only be evidence for or against the plaintiff therein, but would operate for or against the purchasers, (who were the co-defendants) under the authority thereof; at the same time *avoiding* the designation of the *mode* by which that *fact*, whether affirmative or negative, *was* to *be established;* and then to show that in the case before the court it was established negatively by the responsive answer of the defendant, Holland. There could be no propriety in intimating any opinion as to what would be the effect of a directly opposite state of facts, to wit: an admission by the defendant Holland in his answer of the allegations in the bill, and in fact no such opinion was intimated." *Pettit vs. Jennings,* 2 *Robt. Va. R. at p.* 682.

These two cases of *Field vs. Holland,* and *Osborn vs. The Bank of the U. States* being then disposed of, there are no other

cases in the United States, except a few that have been decided expressly upon their supposed authority, which give any color, as we have already remarked, to the supposed exception to the general rule, which we have been examining. And Chancellor WALWCRTH, after his criticisms upon these two cases, and an elaborate examination of the various decisions to the contrary, remarks, "I have not been able to find any case in the reports of the court of chancery in England or in Ireland, in which the answer of one defendant has been permitted to be read in evidence *against* another, except in those cases where the defendants were combined, either legally or fraudulently, so as to create a unity of interest between them." (*Christie vs. Bishop*, 1 *Barb. Ch. Rep. at p.* 120.

There are other cases, however, besides that of *Field vs. Holland*, where the answer of one defendant, in its operation *against* the complainant is allowed to operate also for the protection and shelter of a co-defendant. So, there are cases where the answer of the responding defendant, although in *favor* of the complainant, operates also for the like shelter of a co-defendant But neither class of cases in any degree violates the rule, that the answer of one defendant cannot be read in evidence against his co-defendant, or makes any exception to it, otherwise than in the merest matter of form, without any substance at all—all being in conformity to the ordinary rules of law as to confessions, declarations and admissions. Of the former class is the American case oi *Mills vs. Gore*, (20 *Pick. R.* 28,) where the protected defendant occupied the attitude of stakeholder, having been the mutual depository of the subject matter, and upon the bill of one of the contestants was made a co-defendant with the other, and defended himself under his claim. Thus circumstanced, he was allowed to read the answer in his favor upon the two grounds, as the court put it, that the complainants having called upon the responding defendant for the discovery, he could not be allowed to say that his answer was no evidence in the cause ; and that such testimony, when in favor of a co-defendant, was not within the reason of the rule, excluding the answer of one defendant

*against* another, because in the former case, the important privilege of cross-examination is not sacrificed as in the latter.

Of the latter class, is the English case of *Greene vs. Pledger*, (3 *Hare's Rep.* 165,) where the case made by the bill, was that Bernard Angle, a bankrupt, for the purpose of swindling his creditors, secretly put money in the hands of his brother, John Angle, on the security of two promissory notes [6] executed by Pledger, who knew that the money was the assets of the bankrupt: that when John Angle was summoned to attend, as a witness, on the fiat against his brother, Bernard, he refused to attend and absconded to Boulogne. The two promissory notes payable to John Angle, were taken from his possession by the messenger under the fiat, and delivered to the complainant, who was the official and creditors' assignee of the bankrupt: and the notes not being endorsed, the complainant could not recover upon them at law against Pledger. Pledger answered admitting his liability to John Angle, but ignored altogether the case of the complainant, not admitting that the money, as alleged, was a part of the assets of the bankrupt, and submitted that if the court should be of opinion that the complainants were entitled to the notes, or the beneficial interest in them, that then he ought to be considered a stakeholder and be allowed his costs. Under an English statute, John Angle was served at Boulogne with a subpœna to appear and answer the bill. Afterwards the vice chancellor made an order that the service of a notice of motion upon John Angle at Boulogne, should be good service. The notice was accordingly served, and the motion then made, (founded upon affidavits as against John Angle) that Pledger should pay the money into court. John Angle did not appear, and the motion came on to be heard on the affidavits as against him, and upon the answer of Pledger to the bill already in. The Vice Chancellor in granting this motion, said: "The defendant Pledger admits his liability to John Angle, and ignores only the question of right as between the plaintiff and John Angle. If John Angle were not a party to this suit, the plaintiffs would have to join issue with Pledger upon their right as against John Angle, and would be bound to prove that right as against Pledger. But the latter being a par-

ty, it is with him, and him only, that the plaintiffs have to litigate that right: and a decree in the plaintiffs' favor against John Angle will be a sufficient protection to Pledger. That it is with John Angle, the plaintiffs have to litigate that question is clear from the consideration, that an admission by John Angle in his answer, of the plaintiff's right as against himself, would entitle the plaintiff to a decree according to the prayer of the bill. At the same time it is clear that John Angles' answer would not, technically speaking, be evidence against Pledger. So, if the bill were taken *pro confesso* against John Angle, *or* if the plaintiffs' rights, as against John Angle, were proved by evidence not receivable against Pledger. The consequence of both John Angle and Pledger being parties to the suit is, that a decree in the plaintiffs' favor will decide the case between the co-defendants. (*Chamley vs. Lord Dunsancy,* 2 *Sch. & Lef.* 718. *Farquharson vs. Seton,* 5 *Russ.* per Lord ELDON,) I might refer to analogous cases, in which a disclaimer by one defendant has enabled the plaintiff to sustain his suit against another defendant; the principle being, that after a decree founded upon the disclaimer, the court will not permit the disclaiming party to open the question anew, (*Leathes vs. Newitt,* 3 *Ea. & Go.* 848. *Mounsey vs. Burnham,* 1 *Hare* 21.") After showing him that the case before him was unlike the case of *Doubless vs. Flint,* (1 *Myln. & Cr.* 502,) the Vice Chancellor then concludes with the remark: "I want no evidence but what his answer gives me, and I take nothing from him but what he admits he has no right to hold as against John Angle. Against John Angle the case is established, for the present purpose at least, by the affidavits, to the reception of which he could not object."

The affidavits, by which this motion was supported, being taken, upon the hearing of the motion, as equivalent to the answer of John Angle, confessing the complainants' equity upon the final hearing, it will be seen that this latter case differs from the Massachusetts case, just cited, mainly in the fact, that the answer of the real litigant defendant, was offered to be read by the *complainant* in the bill, instead of by the *co-defendant*, as in the Massachusetts case; and that, in the one case, the answer

read denied the equity of the bill, while in the English case it is taken as confessing it. But the same principle governs both cases. That it is to say, in neither was the answer read in evidence *against* the co-defendant. In the Massachusetts case it was not against him, because he set up no right of his own, and the answer was against the complainant and in favor of the responding defendant, in whose right he made his defence. So, in the English case, it was not against the co-defendant, Pledger, as the Vice Chancellor labors to show by several illustrations, among others the case of a disclaiming defendant, while he distinctly recognizes the rule, that the answer of one defendant cannot be read in evidence against another; and concludes by repeating the idea, which he had been enforcing throughout: "I want no evidence against Pledger, but what his answer gives me, and I take nothing from him but what he admits he has no right to hold as against John Angle."

In both cases, however, the decree for and against the complainants, respectively, operated for the protection of the defendants, respectively, whose interest was balanced between the real litigating parties as would be the complainant's attitude in a bill of interpleader.

We have have used this case of *Green vs. Pledger* by way of illustration, and have set it out at large, not only because it is apposite, but also because Mr. DANIEL, in his work on Chancery Pleading and Practice, (*Vol.* 2, *p.* 982,) has, upon the single foundation of this case, built what he seems to consider an exception to the general rule, and has expressed his idea of it in terms so vague and general as to be calculated to mislead, as well by those means as by giving to the case more prominence and importance than it deserves. The passage in his work to which we allude is this: "In cases, however, where the rights of the plaintiff, as against one defendant, are only prevented from being complete by some question between the plaintiff and a second defendant, it seems that the plaintiff is permitted to read the answer of such second defendant for the purpose of completing his claim against the first;" and it was cited by this court as one of

the authorities for admitting an exception to the general rule in the case of *Whiting & Slark vs. Beebe et al.* (7 *Eng. R.* 561:) the other authorities cited being *Field vs. Holland, Osborne vs. The Bank of the U. States,* and *Morse vs. Royal,* 12 *Ves. R.* 355; which latter was a case where Green, a part of whose answer was received as evidence, was a defendant in the double capacity of executor of one deceased party, and as residuary legatee of another, between the estates of which deceased parties there was a complication of interest; and Lord Erskine allowed so much of his answer to be read, relating to his capacity of executor as was not in favor of his interest as a residuary legatee. And the same authorities had been before cited in the case of *Barraque & wife vs. Siter, Price & Co.,* 4 *Eng. R.* 545, where it was said that the rule of exclusion did not apply to cases where the defendant claims through him, whose answer is offered in evidence. But holding, as we must now do, after a more careful and thorough examination of the question, in which we have closely scrutinized these authorities, that the answer of one defendant cannot be read in evidence against his co-defendant, unless he refers to such answer as correct, or is so connected with the answering party as to be bound, under the ordinary rules of law, by his confessions, declarations or admissions, it is proper for us to remark that the doctrine of those cases upon this point must be so modified as to conform to the views now expressed.

In reference to that exception to the general rule of evidence, that the admissions of one person cannot be given in evidence against another, which is founded upon and arises out of the connection of interest between the person making the admission and him against whom it is offered—as that of joint ownership or liability, or that of the derivation of title of one several owner from another—there is this essential difference between a joint interest and a derivative interest, that is always of controling import upon a question of admissibility, that is to say, the joint interest to be affected by the admission must be a subsisting, one, at the time the admission was made; whereas in the other case, the derivative interest to be affected by the admission was made.

must have been acquired after the admission was made. Whether the party making the admission and the party against whom it is offered, be connected by a joint ownership or liability, or by the transmission of a several title, from the former to the latter, the interest of the party making the admission must be a subsisting one at the time of the admission. If at the time of making it he has parted with his interest, his admissions are not legal evidence against him to whom it has passed. Upon this point the authorities are clear and numerous, and without exception or qualification in the application of the rule to vendors and assignors. Indeed the Supreme Court of New York, in the cases of *Beach vs. Wise*, 1 *Hill's R.* 612, and *Starke vs. Boswell*, 6 *Hill R.* 495, have gone beyond this, and held that the admission of a former owner of personal property, or of a chose in action, even if made before he parted with his title, are not evidence against his vendee. This would seem, however, to be an invasion upon established principles of evidence.

Applying these principles to the answer of Moses Ferguson, it is entirely clear that it was not admissible as evidence against his co-defendant Blakeney.

The result is, that the complainants have no evidence in the record to prove their material allegation, that they are the widow and heirs at law of Joseph Ferguson, deceased, under whom they claim to derive title to the land in controversy. Upon this ground then as well as that already considered as to costs, this decree must be reversed, and as the record does not furnish the materials upon which we can found another decree, which would reach all the merits of this case, we shall order the bill to be dismissed without prejudice to the rights of the complainants, and at their costs; that the appellant, Blakeney, may at once have the benefit of his writ of possession that has already been affirmed to him by this court.